27287. JACKSON *v.* HOWELL.

DECIDED FEBRUARY 8, 1939.

*C. E. Sutton, W. A. Slaton,* for plaintiff in error.
*Earle Norman,* contra.

SUTTON, J. R. L. Howell brought suit against H. C. Jackson to recover an alleged balance of $366.31 for certain timber sold under a written contract, for interest, attorney's fees, and expenses of litigation. It was alleged that on September 13, 1937, the parties entered into a written contract, a copy of which was set out in substance in the petition and which provided for the sale by Howell to Jackson of all the merchantable pine timber located on a certain tract of land, containing 269 acres, more or less, purchased by the plaintiff from the Penn Mutual Life Insurance Company, to be paid for by Jackson when cut at $2 per thousand board feet for boards 1x4, and $4 per thousand board feet for boards 1x6 and up, "to be paid by said party of the second part [Jackson] $400 on demand and $400 Oct. 15, 1937, both of said payments to be made to the Penn Mutual Life Insurance Company of Philadelphia, Penn., through their office at Macon, Georgia, and the remainder to be paid when all the lumber has been delivered and counted at the plainer [planer] of said party of the second part at Washington, Ga." The contract provided that Jackson was to have eighteen months in which to cut and remove the timber, and that "Said

party of the first part warrants the title to said timber, when this contract approved by Penn Mutual Life Insurance Company." It was alleged that the amount of the boards cut was $966.31, and that after deducting $600 paid by Jackson to the insurance company he was indebted to the plaintiff in the sum of $366.31; that the plaintiff demanded that defendant pay him such sum, but that defendant refused to pay anything, stating that he owed plaintiff nothing because after the written agreement had been entered into it was repudiated by both parties by agreement, and that an oral agreement was made whereby the plaintiff sold the defendant the entire body of timber for the sum of $600 cash, which had been paid to the insurance company and that, therefore, he owed the plaintiff nothing. The petition further alleged that the defendant had acted in bad faith, had been stubbornly litigious and had caused plaintiff unnecessary trouble and expense, and in addition to the sum of $366.31 and interest plaintiff was entitled to expenses of litigation, including a reasonable amount for attorney's fees and costs, for all of which he prayed.

The defendant filed a plea in abatement on the ground that all of the purchase-price was payable to the insurance company and that, therefore, the plaintiff was not entitled to bring the action. He also filed an answer denying that he was indebted in any sum, and that the original contract was not assented to by the insurance company, was rescinded by him and the plaintiff, and a new agreement entered into orally whereby he was to pay the plaintiff $600 for the timber, such amount to be paid to the insurance company, that the plaintiff agreed to pay $300 to the company, and that this was for the purpose of obtaining the consent of the company to the release of the timber, that the amount of $600 was in fact paid by him on November 17, 1937, when he was presented with a draft for that amount from the company, who held a security deed from the plaintiff to secure the balance of the indebtedness of the land purchased by the plaintiff. The case was submitted to the jury on the plea in abatement and on the merits, with instructions to return separate verdicts. The jury returned a verdict against the plea in abatement, and returned a verdict in favor of the plaintiff for $366.31, but without any amount for the expenses of litigation. The exception is to the judgment overruling the defendant's motion for new trial.

446

■ It appears from the undisputed evidence in the present case that the plaintiff had purchased from the Penn Mutual Life Insurance Company a certain tract of land, and that to secure the unpaid portion of the purchase-price had executed to the company a security deed. Under the contract set out in the petition and introduced in evidence the plaintiff and defendant entered into an agreement whereby the defendant was to have the privilege of cutting and removing from the land certain timber on terms stipulated in the agreement, it being understood that it was subject to the approval of the company as to the cutting of the timber. In the sale of the land to the plaintiff it was provided that none of the timber was to be cut until the plaintiff's indebtedness had been reduced to $900. At the time the contract here involved was entered into the unpaid balance was $1800. While it is not clear from the contract to whom the balance due for the total quantity of timber to be cut was to be paid, a fair construction, in the absence of a specific statement that it was also to be paid to the insurance company, is that it was to be paid to the seller. When the contract was brought to its attention, the company advised the plaintiff that it was unwilling to agree to the cutting of the timber under the terms specified therein, insisting that it should be paid $900 in cash. This payment would reduce the indebtedness of $1800 to $900, the latter being the amount which had theretofore been specified as that to which the plaintiff's indebtedness must be reduced before any timber could be cut from the land in question. According to the evidence introduced on behalf of the plaintiff, he and Jackson then modified the contract, whereby Jackson was to advance $600 of the $900 necessary to satisfy the insurance company, and the plaintiff was to pay it $300. The plaintiff remitted $300, and thereafter the company indorsed its consent on the back of the original contract which had been submitted to it, attached the paper to a draft for $600 on Jackson, and this was paid on November 17, 1937. The company, construing the provisions of the contract as to payments for timber cut to mean that all of the proceeds therefrom were to be paid to it, recited in its written consent that it was given in consideration of the payment to it of the entire proceeds of the timber, of which amount $600 was to be paid in cash upon delivery of the written consent which was attached to the draft. Jackson, under the approval of the plaintiff,

had about completed the cutting of the timber when the draft was presented and honored. He testified that, when it was reported to him that the insurance company would not give its consent unless $900 was paid in cash, he had the timber cruised and informed the plaintiff that he would pay only $600 for all of the timber, and that the plaintiff thereupon agreed to personally remit $300 to the company to make the total of $900 which was insisted upon, the plaintiff stating that he could repay himself by cutting certain hardwood timber from the land, that they rescinded the original written agreement, and that he had fully paid for the timber when he honored the draft for $600 which was drawn on him by the company. Thus, in the state of the conflicting evidence, the jury was authorized to return a verdict for either of the parties. They returned a verdict in favor of the plaintiff on the plea in abatement and also on the merits of the case, both of which we think were authorized.

Clearly the plaintiff, notwithstanding that the insurance company held a security deed to the land in question, was the true owner thereof, and, under previous decisions of this court and the Supreme Court, was entitled to cut timber from the land unless the security of the grantee was thereby impaired. It appears from the record that the insurance company, by providing the amount to which the indebtedness of the plaintiff should be reduced before any timber could be cut, had itself fixed its margin of safety. Accordingly, it insisted on receiving such an amount as would reduce the indebtedness of $1800 to $900. It received this amount, $300 from the plaintiff and $600 from the defendant, and the indebtedness being thereby reduced to $900 the plaintiff was at liberty to cut the timber and sell it to the defendant. The act of incorporating in the release a provision that all of the proceeds from the timber were to be paid the insurance company was without force and effect, was unauthorized, and bound nobody, because the minute the company received $900 its consent was not needed, and it could not, while giving its consent in connection with drawing a draft for the $600, impose any obligations on Jackson or the plaintiff Howell. The true owner was the only party entitled to deal with the timber when the company was paid $900, and all sums due by Jackson under the contract as amended were payable to and belonged to the plaintiff thereafter. It is insisted by the

plaintiff in error that if compelled to pay the plaintiff $366.31 it may also have to pay the insurance company a similar sum in the event of suit. The answer to that is that the company has no interest in the contract since receiving $900. When it received that amount, which is undisputed, and which amount reduced the plaintiff's indebtedness to $900, the question of consent became moot.

■ The first special ground of the motion for new trial, complaining that the verdict and judgment on the plea in abatement were not authorized under the evidence, is controlled adversely to the plaintiff in error by the ruling in the first division of the opinion.

■ The second and third special grounds of the motion complain that the court erred in admitting in evidence two letters from the insurance company to the plaintiff, it being contended that the matters between them therein referred to were not binding on the defendant. The record shows that they were admitted only for the purpose of explaining the conduct of the plaintiff in dealing with the defendant, and the court made a notation as to these particular grounds that they were approved only to the extent named. From the stenographer's transcript included as a part of the record it appears that counsel for plaintiff in error acquiesced in the direction given by the court as to the purpose for which the letters were admitted in evidence, and no merit is shown in these grounds.

■ The fourth and fifth special grounds complain of certain portions of the charge of the court, as to which it is contended that the court misstated the contentions of the parties in such a way as to be harmful to the defendant. These contentions were stated as being those of the plaintiff only, and under the pleadings and the evidence were substantially correct and not error for any reason assigned. Furthermore, the court instructed the jury that they would have the pleadings out with them for reference in determining the issues involved in the case.

■ The charge of the court that "I charge you that if there was an agreement between Mr. Jackson and Mr. Howell under and by virtue of which Mr. Howell was to pay the sum of $300 to the Penn Mutual Life Insurance Company and that he did pay it, that the Penn Mutual Life Insurance Company received it as a part and parcel of this contract, why in that event I charge you that the plea in abatement would not be good, and it would be your duty to re-

turn a verdict against the plea in abatement, which would be in favor of Mr. Howell" was not error for the assigned reason that it was an expression of opinion of the court as to the facts of the case. The charge merely instructed the jury that the plea in abatement would not be good if the jury found certain facts to be true, but the court did not intimate as to what had been proved.

■ The seventh special ground complains of the addition by the court of the following language, "That is a question for you to determine under the evidence," to a requested charge, "If Mr. Howell, the plaintiff, and Mr. Jackson, the defendant, entered into a contract which to be effective must be approved by the Penn Mutual Life Insurance Company, and if that company refused to approve the contract and the parties then entered into a new contract, which was approved by the Penn Mutual Life Insurance Company, I charge you that the last contract would be the binding contract and not the first one," it being contended that it was confusing to the jury and gave them to understand that they might determine which of the contracts was the binding and effective contract. It was the contention of the plaintiff that the contract between himself and the defendant was the written agreement modified in respect to the amount to be paid by the defendant to the insurance company, the defendant contending that the original contract was rescinded and a new one entered into whereby he was to pay only $600 for all of the timber, without reference to the quantity cut. Certainly it was within the province of the jury to determine the questions referred to by the court. The jury was not being instructed to determine the law applicable to facts at issue, but to determine what were the facts as to which the court stated the law that would apply.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*